FILED

01/30/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2017 Session

IN RE ALIVIA F.

Appeal from the Chancery Court for White County
No. 2015-CV-41     Ronald Thurman, Chancellor

_____

No. M2016-02328-COA-R3-PT

_____

A mother appeals from the termination of her parental rights to her child. The chancery court found clear and convincing evidence of two statutory grounds for termination: abandonment by willful failure to support and persistence of conditions. The court also found that termination of the mother's parental rights was in the child's best interest. Because we conclude that the evidence was less than clear and convincing as to each ground for termination, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and THOMAS R. FRIERSON II, J., joined.

Cindy Morgan, Sparta, Tennessee, for the appellant, Juanita Y.

Mark E. Tribble, Cookeville, Tennessee, for the appellees, Jermaine F. and Shannon F.

**OPINION**

**I.**

The marriage of Juanita Y. ("Mother") and Jermaine F. ("Father") produced one child, Alivia F., born in July 2008. The parents separated in 2010 and eventually divorced, with Mother being awarded primary custody of the child.

In late July 2013, Mother left a "slurred" voicemail message in response to a call from a case manager with the Tennessee Department of Children's Services ("DCS"). As a result, a DCS team leader visited Mother's home, where she observed Mother to be

"impaired." Mother's drug screen was positive for methamphetamine, amphetamine, buprenorphine, benzodiazepines, and opiates. And she admitted to a history of drug abuse. As a result, DCS placed Alivia in Father's care.[1]

At a subsequent adjudicatory hearing, Mother stipulated to the facts in DCS's petition related to her use and abuse of illegal drugs. On October 10, 2013, the Juvenile Court for White County, Tennessee, entered an order adjudicating Alivia to be dependent and neglected and placing her in Father's sole temporary custody.

After successfully completing the recommendations of her first permanency plan, DCS returned custody of Alivia to Mother in January 2014. But Mother's reunion with Alivia turned out to be short-lived. A few months later, after receiving a report that Mother was involved in a fight at a known drug user's home, DCS began another investigation. At that time, Mother's hair follicle screen was positive for methamphetamine and oxycodone.

DCS sought emergency temporary custody of Alivia and removed her from Mother's care and placed her with Father. On or around August 29, 2014, the juvenile court again entered an order adjudicating Alivia to be dependent and neglected.

Thereafter, Mother participated in the creation of another permanency plan with DCS. Mother was allowed supervised visitation with Alivia two hours a week. Although Mother completed intensive outpatient rehabilitation as recommended, she was only partially compliant with DCS's requirements.

On May 13, 2015, Father and Shannon F. ("Stepmother") filed a petition for termination of Mother's parental rights and for adoption in the Chancery Court for White County, Tennessee. The petition alleged two grounds for termination: abandonment by willful failure to support and persistence of conditions. The petition also alleged that termination of Mother's parental rights was in the best interest of the child.

About a week later, several witnesses at a child and family team meeting attended by Mother observed that Mother smelled of alcohol. After initially denying that she had consumed alcohol, Mother ultimately admitted that she drank a glass of wine at lunch.

Based in part on the incident at the child and family team meeting, in early June 2015, Father filed a motion to suspend Mother's visitation. In addition to alleging Mother was intoxicated at the meeting, Father alleged that Mother "intend[ed] to tell the child of the father's attempts to terminate her rights and other damaging information."

---

[1] DCS also removed Alivia's older half-sister from Mother's care. Mother's parental rights to the half-sister are not at issue in this appeal.

Four days later, Father filed a motion for ex parte order to suspend visitation with the additional allegation that Mother threatened to kill him for filing the termination petition. The chancery court entered the ex parte order, and later after a hearing, the court entered an order suspending Mother's visitation with Alivia "pending further hearing."

This state of affairs continued through the trial of the parental termination case, which took place over two days in May and August 2016. On October 3, 2016, the chancery court entered a final order terminating Mother's parental rights to Alivia. The court found clear and convincing evidence of both statutory grounds for termination alleged in the petition. The court also found clear and convincing evidence that termination of Mother's parental rights was in the child's best interest.

## II.

A parent has a fundamental right, based in both the federal and State constitutions, to the care and custody of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995). But parental rights are not absolute. *In re Angela E.*, 303 S.W.3d at 250. Our Legislature has identified those situations in which the State's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g) (2017).

Tennessee Code Annotated § 36-1-113 sets forth both the grounds and procedures for terminating parental rights. *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). First, parties seeking termination of parental rights must prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). Tenn. Code Ann. § 36-1-113(c)(1). Second, they must prove that terminating parental rights is in the child's best interest. *Id.* § 36-1-113(c)(2).

Because of the constitutional dimension of the rights at stake in a termination proceeding, parties seeking to terminate parental rights must prove both the grounds and the child's best interest by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808-09 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). This heightened burden of proof serves "to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights." *In re Bernard T.*, 319 S.W.3d at 596. "Clear and convincing evidence" leaves "no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Bernard T.*, 319 S.W.3d at 596.

3

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). In termination proceedings, we then "make [our] own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d at 596-97. We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

## III.

On appeal, Mother raises seven separate issues for review. The first three of the issues relate to the suspension of Mother's visitation and the grounds for termination of Mother's parental rights. We begin our analysis with a review of the statutory grounds relied upon by the chancery court.

### A.

### 1. Abandonment by Willful Failure to Support

One of the statutory grounds for termination of parental rights is "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). The General Assembly has provided "five alternative definitions for abandonment as a ground for the termination of parental rights." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005); *see also* Tenn. Code Ann. § 36-1-102(1)(A) (2017) (defining the term "abandonment"). The juvenile court concluded that Mother abandoned the child under the first definition. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i).

Under the first definition of abandonment, a parent's parental rights may be terminated if the parent "willful[ly] fail[ed] to visit, to support, or to make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013); *see also* Tenn. Code Ann. § 36-1-102(1)(A)(i) (2017). Because the petition was filed on May 13, 2015, the relevant four-month period is January 13, 2015, to May 12, 2015, the day before the petition was filed. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (concluding that the day before the petition is filed is the last day in the relevant four-month period).

In order to terminate parental rights on the ground of abandonment, the court must conclude that the abandonment was willful. While the failure to support presents a

question of fact, whether that failure is willful presents a question of law. *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864.

The chancery court found that, although Mother was working during the relevant four-month period, she failed to pay any support. But under this ground for termination, the financial ability, or capacity, of a parent to pay child support must be considered in determining willfulness. A parent's failure to support a child is not willful if the parent is financially unable to do so. *In re Aaron E.*, No. M2014-00125-COA-R3-PT, 2014 WL 3844784, at *6 (Tenn. Ct. App. Aug. 4, 2014). In making a willfulness determination, the court must review a parent's means, which includes both her income and available resources for purposes of support. *See In re Adoption of Angela E.*, 402 S.W.3d at 641.

From our review of the record, Father and Stepmother presented no evidence of Mother's income or available resources during the four months preceding the filing of the termination petition. Mother was asked extensively about her work history, but she was never asked about her income or expenses during the relevant four-month period. As a result, we cannot determine whether Mother had the capacity to pay any support.

We conclude that the evidence was less than clear and convincing that Mother willfully failed to support her children. Without at least some testimony or evidence concerning Mother's income and expenses during the relevant four-month period, there was no basis to find that Mother's failure to pay child support was willful. *See In re Lynx C.*, No. E2016-01568-COA-R3-PT, 2016 WL 7378801, at *5 (Tenn. Ct. App. Dec. 20, 2016). Father and Stepmother failed to carry their burden of establishing failure to support as a ground for termination.

2. Persistence of Conditions

The juvenile court also found termination of Mother's parental rights appropriate under Tennessee Code Annotated § 36-1-113(g)(3), a ground commonly referred to as "persistence of conditions." *See In re Audrey S.*, 182 S.W.3d at 871. The persistence of conditions ground focuses "on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *Id.* at 874. The goal is to avoid having a child in foster care for a time longer than reasonable for the parent to demonstrate the ability to provide a safe and caring environment for the child. *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds*, *In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). The question before the court, therefore, is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

There are several elements to the ground of persistence of conditions. The ground applies as a basis to terminate parental rights when:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent . . . still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

(C) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). Each of the statutory elements must be established by clear and convincing evidence. *In re Valentine,* 79 S.W.3d at 550.

Here, it is undisputed that the child was removed for more than six months from Mother's home by court order adjudicating her to be dependent and neglected. Mother argues, however, that she had made adjustments in her life such that her rights should not be terminated.[2]

From our review, Mother's abuse of illegal drugs appears to be the only condition cited as the basis for removal of the child on both occasions and the main issue litigated at the termination hearing. The chancery court determined that the persistence of conditions ground applied based on several factual findings. Specifically, the court found that Mother attempted to conceal her alcohol consumption before attending a child and family team meeting, Mother associated with a man against the advice of DCS and ultimately married him, and Mother tested positive for methamphetamine "as late as June 2015."

---

[2] Mother also argues that the ground of persistence of conditions is inapplicable because the child was not placed in foster care. Under the plain language of the statute, however, the child need not be in foster care for this ground to apply. *See* Tenn. Code Ann. § 36-1-113(g)(3).

As an initial matter, we note that the reason the child was removed from Mother's home was her abuse of drugs, not alcohol. Indeed, the court order removing the child from Mother's custody made no mention of any alcohol abuse. And even though an alcohol assessment was a component of one of Mother's permanency plans, the primary goal of the plans appeared to be to address Mother's use of illegal drugs. Although this statutory ground refers to "conditions that led to the child's removal *or other conditions*," Tenn. Code Ann. § 36-1-113(g)(3)(A) (emphasis added), we do not see an apparent isolated incident of alcohol use as indicative of a condition that might lead to further abuse or neglect of the child. Our past decisions support such a conclusion. *See, e.g.*, *In re Jayden G.*, No. W2014-00881-COA-R3-PT, 2014 WL 4922638, at \*9 (Tenn. Ct. App. Sept. 30, 2014) (concluding that the mother's continued use of alcohol and relationship with a drug user were insufficient to prove persistence of conditions when there was no evidence that the mother continued to abuse drugs, the condition cited as the basis for the child's removal); *In re C.M.C.*, No. E2005-00328-COA-R3-PT, 2005 WL 1827855, at \*12 (Tenn. Ct. App. Aug. 3, 2005) (concluding that the mother's positive drug screen on the date of trial did not support a finding of persistence of conditions when the condition that led to the children's removal was the mother's struggle with alcohol, not illegal drugs).

While the petition to terminate parental rights was pending, Mother remarried. Her new husband was someone that DCS had warned Mother against. Those warnings turned out to be well-founded. Mother at some point received an order of protection against him and filed a complaint against him for assaulting her with a knife.[3] Just over a month after the marriage, Mother's new husband kidnapped her, throwing her in his car. A high speed police chase followed, ending in a car accident, which seriously injured Mother. Due to the accident, Mother was hospitalized from September 15 until October 31, 2015.

Although the chancery court criticized Mother's choice to associate with and marry a man that DCS warned her about, the court did not find, and the record does not establish, that Mother's relationship continued after the kidnapping and car accident. And no evidence was presented that Mother allowed the man to have any contact with the child. In fact, Mother's unrefuted testimony was that, though she still loved her husband, she did not visit him in jail and she did not want him around her family.

As for Mother's positive test for methamphetamine "as late as June 2015," the test was administered almost a year before the commencement of the termination hearing. And Mother's hair follicle results in July 2015, just a month later, were negative for all

---

[3] The final disposition of these matters is unclear. According to Mother, she "never went to court for [the order of protection] or the assault that [she] filed," so the court "threw them both out." Father and Stepmother's brief, however, asserts that Mother dismissed the order of protection.

drugs tested. No evidence was introduced that Mother continued to abuse illegal drugs after her car accident in September 2015. Rather, Mother testified that she only took prescription drugs, which was not disputed. To be sure there are still concerns, but the concerns extend to both Mother and Father. Mother was arrested on suspicion of driving under the influence in early September 2015, and Father had a positive drug screen for marijuana in August 2015.

We do not minimize the challenges Mother faces and will continue to face in remaining free of illegal drugs. And Mother has certainly exhibited poor decision-making. But based on this record, we conclude that the evidence was less than clear and convincing that the conditions which led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect still persisted. Because termination of parental rights on the grounds of persistence of conditions requires clear and convincing evidence of each of the statutory elements, we need not address the remaining elements.

B.

As Father and Stepmother failed to prove by clear and convincing evidence a statutory ground for termination of Mother's parental rights, we do not reach the remaining issues raised on appeal. *See In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (requiring that the party seeking to terminate parental rights prove by clear and convincing evidence both a ground for termination and that termination is in the child's best interest).

**IV.**

The record does not contain clear and convincing evidence to support terminating Mother's parental rights on either of the grounds relied upon by the chancery court. Thus, we reverse the judgment of the chancery court terminating Mother's parental rights. And we vacate the order suspending Mother's visitation.

_____
W. NEAL MCBRAYER, JUDGE